IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | CR. NO. 3:25-CR-00104-ECM-SMD |
| ) | |
| ROBERT GLENN SLAYBAUGH ) | |
| ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Defendant, Robert Glenn Slaybaugh ("Slaybaugh"), is charged in a one-count indictment with failure to register as a sex offender in violation of 18 U.S.C. § 2250. Indict. (Doc. 1). Slaybaugh allegedly moved from his registered address in Georgia to a new address in Alabama without notifying authorities. As part of their investigation, police used information from automatic license plate readers ("ALPRs") to track Slaybaugh's location for three weeks. Mot. (Doc. 31) pp. 3-4. ALPRs use a combination of digital cameras and computer software to scan the license plates of every car passing by.[1] They log the date and time of each scan, the vehicle's GPS coordinates, and record images of the car. *Id.* Slaybaugh argues that police needed a warrant before accessing ALPR information concerning him, and he moves to suppress all evidence derived from the ALPRs. Mot. (Doc. 30) p. 1. The Government argues that police use of ALPRs to track a vehicle on public streets is not a search under the Fourth Amendment. Resp. (Doc. 43) pp. 2-4. No

---

[1] Angel Diaz & Rachel Levinson-Waldman, *Automatic License Plate Readers: Legal Status and Policy Recommendations for Law Enforcement Use*, Brennan Center for Justice Research Report, Sept. 10, 2020, at 2, https://www.brennancenter.org/our-work/research-reports/automatic-license-plate-readers-legal-status-and-policy-recommendations.

court has held that police use of ALPRs is a search requiring a warrant, and the undersigned RECOMMENDS that Slaybaugh's motion to suppress be denied.

I. FACTS[2]

Flock Safety, Inc. is a private company that operates a network of ALPRs. Mot. (Doc. 31) pp. 3-4 ¶ 14. Law enforcement agencies purchase data collected by Flock's ALPR network. *Id.* Lee County, Alabama, authorities suspected that Slaybaugh had moved from his registered address in Georgia to his girlfriend's address in Lee County without notifying authorities in either jurisdiction. *Id.* at 2 ¶¶ 7-8. Police used information from Flock's ALPRs to track the location, direction, and route of Slaybaugh's truck on public roads for three weeks from January 8, 2025, through January 27, 2025. *Id.* at 3 ¶¶ 9-13. Twenty different ALPRs recorded at least 72 images of Slaybaugh's truck between the hours of 5:00 am and 10:00 pm during this period. *Id.* The police did not obtain a warrant prior to accessing the ALPR information or notify Slaybaugh they were collecting this information. *Id.* at 4 ¶ 15.

II. ANALYSIS

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. The Supreme Court explains that "whether a particular form of government-initiated electronic surveillance is a 'search' within the meaning of the Fourth

---

[2] For purposes of this recommendation, the undersigned accepts the facts alleged in Slaybaugh's motion as true. An evidentiary hearing is unnecessary to resolve the legal issue presented.

Amendment" turns on whether the subject has a "'legitimate expectation of privacy' that has been invaded by government action." *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (applying *Katz v. United States*, 389 U.S. 347, 351-353 (1967)). A defendant challenging an alleged search bears both the burdens of proof and persuasion on this issue. *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998).

The Supreme Court instructs that "[a] person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." *United States v. Knotts*, 460 U.S. 276, 281-282 (1983). The Court explains that a person travelling on public streets voluntarily conveys to anyone who wants to look "the fact that he was travelling over particular roads in a particular direction, the fact of whatever stops he made, and the fact of his final destination when he exited from public roads onto private property." *Id.* Aggregating this information over a 21-day period using automated technology does not change this result, and *Knotts'* explicit holding controls here.

Slaybaugh relies on *Carpenter v. United States*, 585 U.S. 296, 313 (2018) to argue that the ALPR information at issue here, like the historical cell-site records in *Carpenter*, invaded his reasonable expectation of privacy in the "whole of his physical movements." Mot. (Doc. 31) pp. 6, 10-11. However, the Supreme Court distinguished cars from cell phones in *Carpenter*. The Court explained that unlike a car, a cellphone is "almost a feature of human anatomy [that] tracks nearly exactly the movements of its owner." *Carpenter*, 585 U.S. at 311 (internal quotes and cites omitted). The Court noted that "[w]hile

3

individuals regularly leave their vehicles, they compulsively carry cell phones with them at all times." *Id.* And unlike a car, a "cell phone faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales." *Id.* The Court concluded that "when the Government tracks the location of a cell phone it achieves near perfect surveillance, as if it had attached an ankle monitor to the phone's user." *Id.* Therefore, the *Carpenter* holding concerning historical cell-site records cannot be read to overrule the binding holding in *Knotts* concerning vehicles on public roads.[3]

Slaybaugh cites several cases addressing ALPRs, but none of them holds that police use of ALPR data constitutes a search requiring a warrant. Mot. (Doc. 31) pp. 6-10. Slaybaugh has failed to carry his burden of showing that he had a reasonable expectation of privacy in the location of his truck while travelling on public roads over a three-week period.

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that Slaybaugh's motion to suppress (Doc. 31) be DENIED. It is further

ORDERED that the parties shall file any objections to this Recommendation on or before July 24, 2025. A party must specifically identify the factual findings and legal

---

[3] In addition, *Carpenter* concerned 127 days of historical cell-site data while this case involves 21 days of ALPR data. *Carpenter*, 585 U.S. at 296. The significantly shorter period of police surveillance here further distinguishes *Carpenter* from this case. Moreover, this case specifically concerns Slaybaugh's license plate mounted on the exterior of his truck which carries no Fourth Amendment protection at all because the "very purpose of a license plate . . . is to provide identifying information to law enforcement officials[.]" *United States v. Ellison*, 462 F.3d 557, 561 (6th Cir. 2006).

4

conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981)(en banc).

DONE this 10th day of July, 2025.

/s/ Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE